(16 P.3d 971)

No. 84,679

SHAWNA TULLIS, *Appellant*, v. PITTSBURG STATE UNIVERSITY, *Appellee.*

Opinion filed August 25, 2000.

*Timothy J. Grillot*, of Parsons, for appellant.

*Wm. Scott Hesse*, assistant attorney general, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., GREEN, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

BRAZIL, C.J.: Shawna Tullis sued Pittsburg State University for injuries received during the performance of a university sponsored play. She appeals the decision of the Crawford County District Court granting summary judgment in favor of the university.

We affirm.

On October 31, 1997, Shawna Tullis, was accidentally stabbed with a knife while participating as an actress in a play sponsored by Pittsburg State University at the Memorial Auditorium in Pittsburg, Kansas. The knife was being used as a prop in the play. The person who stabbed Tullis was another actress who was a student at the university and was not an employee of the university or the State of Kansas.

The play was directed by an employee of the university, Barry Bengston. Tullis was a student at the university but was not re-

ceiving any class credit for her participation in the play. She was also employed part-time at the university but was not acting within the scope of her employment when she was injured.

The university argues that this court does not have jurisdiction to hear this appeal because Tullis failed to properly designate the judgment or part thereof appealed from as required by K.S.A. 60-2103(b). Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Snelling,* 266 Kan. 986, 988, 975 P.2d 259 (1999).

On February 11, 2000, this court issued an order to show cause why this appeal should not be dismissed for lack of jurisdiction. In response, Tullis filed a response and second amended notice of appeal, while the university filed a motion to dismiss the appeal. The university's motion was denied and the appeal was retained.

The argument now raised in the university's brief challenging this court's jurisdiction is the same argument raised in its motion to dismiss the appeal. The argument is essentially one of form over substance. Tullis filed her notice of appeal in a timely fashion but used the wrong words. The notice of appeal read: "You are hereby notified that the defendant appeals from the Notice Pursuant to Supreme Court Rule 170 entered by the Court on the ____ day of December, 1999." Supreme Court Rule 170 (1999 Kan. Ct. R. Annot. 191) lays out the ground rules for the preparation of a journal entry. Notice pursuant to the rule for one party to prepare a journal entry is not technically a final judgment and is therefore not an appealable order. Obviously, Tullis wanted to appeal the journal entry of judgment that was eventually produced pursuant to Rule 170, but for whatever reason, she did not properly state that in her notice of appeal.

Her second amended notice of appeal corrected the mistake. However, this correction came on February 28, 2000, well beyond the statutory time limit for filing the appeal. It cannot reasonably be contended that the university was confused as to what Tullis was appealing or has been prejudiced in any way.

In *Hess v. St. Francis Regional Med. Center,* 254 Kan. 715, 720, 869 P.2d 598 (1994), the Supreme Court noted that the modern code of civil procedure was not designed to make the requirements

of a notice of appeal more technical and burdensome and that a liberal construction is called for in order to secure the just, speedy, and inexpensive determination of every action or proceeding. 254 Kan. at 720.

Also, the Kansas Supreme Court recently decided two criminal cases which support this position: *State v. Boyd,* 268 Kan. 600, 999 P.2d 265 (2000), and *State v. Wilkins,* 269 Kan. 256, 7 P.3rd 252 (2000). While there may be stronger public policy reasons for allowing criminal defendants more latitude in framing their appeals than parties in civil disputes, the Supreme Court in *Boyd* stated that *Hess,* a civil case, "does provide insight to the Kansas modern-day philosophy concerning appeals. The notice of appeal should not be overly technical or detailed." *Boyd* 268 Kan. at 606. The court also stated: "It is clear that by the legislative changes in 1963, the legislature intended it to be easier to take an appeal to an appellate court in Kansas." 268 Kan. at 604.

It would be unjust to prevent Tullis from obtaining appellate review of her case because of poor word choice and a hypertechnical reading of the notice requirements. While inartfully worded, the original, timely notice of appeal sufficiently specified the judgment appealed from. The "Notice Pursuant to Supreme Court Rule 170" which Tullis specified in her notice of appeal refers to the direction by the trial court that a journal entry of its judgment be prepared. Clearly, Tullis desired to appeal the judgment that gave rise to the journal entry that was, pursuant to Rule 170, directed to be prepared. The notice is not so general or unclear as to require this court to search through the record to determine the basis for the appeal. See *State v. Kerby,* 259 Kan. 104, 106, 910 P.2d 836 (1996), and *State v. G.W.A.,* 258 Kan. 703, 706-07, 906 P.2d 657 (1995) (dismissing appeals because notices of appeal filed by the State were insufficiently specific to identify what the appeals were based on without independent research by the appellate court). The judgment Tullis is appealing from is obvious.

Under K.S.A. 1999 Supp. 60-256(c), summary judgment is only proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of fact exists only if a controverted fact has control-

ling legal force as to a controlling issue. *P.W.P. v. L.S.*, 266 Kan. 417, 423, 969 P.2d 896 (1998) (quoting *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, 189, 891 P.2d 385 [1995]).

The university argues it is immune from liability under the recreational use exception of the Kansas Tort Claims Act (KTCA). This involves interpretation of the KTCA and, thus, appellate review is unlimited. *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

The pertinent part of the KTCA is K.S.A. 75-6104 which states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

The university argues that a theater qualifies as a property intended for recreational purposes and that the play in which Tullis was injured was conducted for recreational purposes, thus rendering the university immune from liability absent a showing of gross negligence. Under *Jackson*, the determinative issue is "whether the property was intended or permitted to be used for recreational purposes." 268 Kan. at 329. If so, the university is immune from liability for Tullis' injuries. See 268 Kan. at 329. Whether Tullis was actually engaged in recreational activity is not relevant. See 268 Kan. at 328-29.

*Jackson* interpreted the meaning of "open area" as used in the statute to include a school gymnasium. 268 Kan. at 325. The court reasoned that "[i]t defies common sense to hold that K.S.A. 75-6104(o) provides immunity from injuries which occur on a football field, a baseball field, a track and field area, and a sledding area, but not on an indoor basketball court solely because it is indoors." 268 Kan. at 325. The university argues that, for purposes of the statute, a theater, like a school gymnasium, is an open area intended for recreational use.

The university's argument is logical. Both facilities are used for recreational purposes, and they do share some substantial physical

characteristics. Both have large open spaces with designated areas for performances and seating for spectators. The fact that there is a roof overhead really has no bearing. Basketball can be played in a gymnasium or outside, and as the *Jackson* court noted, it would make no sense to provide immunity for an outside game and not for an inside game. In the same vein, both indoor and outdoor theaters exist, and it would make no sense to include outdoor theaters within the meaning of the statute and not indoor theaters.

Tullis' argument opposing the application of the recreational use exception does not squarely address the issue. She cites the case of *Lanning v. Anderson*, 22 Kan. App. 2d 474, 921 P.2d 813 (1996), but *Lanning* is not on point for this issue. In *Lanning* the issue was not whether the recreational use exception applied, but whether there was sufficient evidence to support a finding of gross and wanton negligence on the part of the government, a requirement for liability under the recreational use exception. Her argument comes down to a simple, unsupported assertion that the recreational use exception does not apply.

Based on the arguments presented and the case law, the university's position is the stronger one. Extending the recreational use exception to include theaters is consistent with *Jackson*.

Following the filing of the university's motion for summary judgment, Tullis asked the court for permission to amend her pleadings to allege gross and wanton negligence on the part of Bengston, the play director. The court denied her motion.

K.S.A. 1999 Supp. 60-215(a) allows a party to amend its pleadings after a responsive pleading has been served, only by leave of the court or consent of the adverse party. Leave to amend "shall be freely given when justice so requires." K.S.A. 1999 Supp. 60-215(a). This court has recognized that " '[a] trial court is given broad discretionary power under K.S.A. 60-215 to permit or deny the amendment of pleadings, and its actions will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party. [Citation omitted.]' " *Clevenger v. Catholic Social Service of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 524, 901 P.2d 529 (1995).

Tullis contends that she was denied a substantial right because she was not allowed to present her full case. However, it should first be noted that she only attempted to amend her pleadings following the close of discovery and the university's motion for summary judgment. Her request to amend was supported only by her own assertions laid out in a belated affidavit. A review of the record shows that the trial court's decision was sound and it acted well within its discretion.

With the absence of gross and wanton negligence on the part of the university, it is immune from liability under the recreational use exception of the KTCA.

Other fact issues raised by Tullis are therefore immaterial, and the university is entitled to summary judgment as a matter of law.

Affirmed.