IN THE COURT OF APPEALS OF THE STATE OF KANSAS

No. 125,770

STATE OF KANSAS,
*Appellee*,

v.

BRANDON STEVEN RUSSELL BELL,
*Appellant*.


SYLLABUS BY THE COURT


1.

In the revised Kansas Sentencing Guidelines for drug crimes, under K.S.A. 21-6805(f)(1), the plain language of "third or subsequent" convictions requires a preexisting first and second conviction of the unlawful possession of a controlled substance. In K.S.A. 21-6805(f)(1), the plain language of "third or subsequent" convictions requires a preexisting first and second conviction of the unlawful possession of a controlled substance.


2.

A second and third conviction under K.S.A. 21-6805(f)(1) may arise in the same hearing. In this way, the reading of K.S.A. 21-6805(f)(1) does not conflict with the inclusive rule found in K.S.A. 21-6810. Each statute simply considers the concurrent but separate convictions for their individual purposes.


3.

In the event the second and third convictions under K.S.A. 21-6805(f)(1) arise in the same hearing, or are sentenced together but are not consolidated, the designation of which conviction becomes the second or third is left to the district court's discretion.

1

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Submitted without oral argument. Opinion filed December 20, 2024. Sentence vacated and case remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Brandon D. Cameron*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., HILL and COBLE, JJ.

COBLE, J.: In two separate, nonconsolidated cases, Brandon Steven Russell Bell pleaded no contest to felony drug charges. As part of the parties' global plea agreement, the State was to recommend probation if Bell's criminal history score resulted in his sentencing range falling in a border box on the sentencing grid. But while awaiting sentencing, Bell twice tested positive for use of illegal drugs. At the sentencing hearing addressing both cases, the State instead suggested a median sentence of 30 months' imprisonment for each conviction. Additionally, the district court considered each of his present convictions to be a third felony conviction under K.S.A. 21-6805(f)(1) and, as a result, imposed a presumptive prison sentence on each, even though Bell had only one prior felony drug conviction.

Bell now appeals, claiming: (1) The district court erred by imposing a presumptive prison sentence under K.S.A. 21-6805(f)(1) for both current convictions, and (2) the State breached the plea agreement. On his first claim, we agree that because Bell had one prior drug conviction, his two current convictions must logically be counted as a second and a third—not both designated as third convictions requiring presumptive prison. As for his second claim, we find that the State erred by breaching the plea agreement. We vacate Bell's sentence accordingly and remand this case for resentencing.

2

FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2022, Bell entered into a no contest, global plea agreement with the State on two counts of felony drug possession—one in each of two pending cases. The district court accepted his pleas and found Bell guilty of one count of possession of methamphetamine in case No. 19-CR-459 (Case 1) and one count of possession of methamphetamine in case No. 21-CR-448 (Case 2).

Among other provisions, the plea agreement outlined the parties' belief in how Bell's criminal history would be scored and where his sentencing range might fall on the drug offense table found in K.S.A. 21-6805(a):

"In [Case 1], I believe that my criminal history score is C and that I will fall in a 'border box' gridbox at sentencing. If I fall in a 'border box' gridbox, the parties have agreed to recommend the median sentence in the gridbox and the State has agreed that the 'border box' criteria have been met as I have completed inpatient drug treatment. In addition, I understand that if I am placed on probation, the term of my probation will be 12-18 months.

"In [Case 2], I believe that my criminal history score is C and that I will fall in a 'border box' gridbox at sentencing; however, a 'special rule' would apply as I was on felony bond at the time of the offense and the Court could order that I serve my sentence without giving me a chance on probation. If l fall in a 'border box' gridbox, the parties have agreed to recommend the median sentence in the gridbox and the State has agreed that the 'border box' criteria have been met as I have completed inpatient drug treatment and that the 'special rule' not be applied. In addition, I understand that if l am placed on probation, the term of my probation will be 12-18 months."

As part of the agreement, the State dismissed all remaining counts in each case, as well as three other pending criminal cases against Bell.

3

The presentencing investigation (PSI) report in each of the present cases revealed that in 2018, Bell was convicted of felony possession of methamphetamine. Each PSI also listed the other current crime, and each recommended that "special rule 26"—presumed prison under K.S.A. 21-6805(f)(1)—should apply because the subject crime committed was the third or subsequent conviction for drug possession.

Bell filed a written objection to the PSI report in each case, arguing that because the convictions in Cases 1 and 2 were scheduled for sentencing at the same time, both could not be third or subsequent convictions. He maintained one of the cases must be designated as his second conviction.

After his plea, but before sentencing, the State filed a motion to revoke Bell's bond. The attached court service officer's affidavit revealed that Bell tested positive for methamphetamine in a urinalysis (UA) collected two weeks prior. A bench warrant was issued for Bell's arrest and the district court held a hearing the same day. During the hearing, the State suggested it had planned to oppose Bell's request for a departure sentence but offered it would not oppose departure and would not ask for him to be remanded to custody if Bell could provide a clean drug test that day. Bell agreed to provide another drug test during the court's recess, but again tested positive for methamphetamine. The district court revoked Bell's bond.

The district court held the sentencing hearing about one month later and first addressed Bell's objection to the PSI report in Case 1. Bell's counsel argued against the application of "special rule 26," and reasoned that *State v. Shipley* should not apply in this circumstance, because that case involved "just general[ly] where [a defendant falls] on the sentencing guidelines." See *State v. Shipley*, 62 Kan. App. 2d 272, 278-79, 510 P.3d 1194 (2022) (finding the defendant's cases were not constructively consolidated, and thus convictions from each case counted as "prior convictions" for criminal history purposes). Bell's counsel maintained:

4

"It just does not make logical sense that you have two convictions, and we go from one conviction to three convictions in both cases and run afoul of the Special Rule. So I would ask the Court to find in this [Case 1] that this is a second conviction for possession of methamphetamines. There would be no Special Rule in regards to a third or subsequent possession, being presumed prison.

"In the other case that we are also scheduled for sentencing [Case 2], I would agree that would be a third time offense, and a Special Rule would be applicable."

The State responded that "in sentencing, when we get PSI's, the convictions always count against each other. They count against each other to an increased criminal history score which increases the penalty." The State maintained that *Shipley* "completely clears up this issue" and nonconsolidated cases always count against each other as prior convictions at sentencing.

The district court denied Bell's objection, finding the law dictates that the court use the "inclusive rule," meaning felony convictions in two separate cases on the same date are scored against each other in the PSI reports. The district court held that in Case 1, Bell's criminal history score was C which found him facing a presumptive prison sentence. Bell argued for a dispositional and durational departure. After hearing arguments from the parties and statements from Bell's witnesses, the district court asked the parties for sentencing recommendations. The State recommended against the plea agreement and asked the court to sentence Bell to a standard sentence of 30 months' imprisonment, applying the special rule, instead of probation. The district court sentenced Bell to the standard 30 months' imprisonment.

The district court next heard arguments on Case 2. The district court announced its same determination from Case 1 regarding the special rule applied. Defense counsel did not challenge Bell's criminal history. The State again recommended that the court impose the standard 30-month prison sentence, applying the special rule. The district court sentenced Bell to the standard 30 months in prison, to run consecutive to Bell's sentence

5

in Case 1. The district court again reiterated that this was a third or subsequent conviction for felony drug possession.

The journal entry on each case noted that special rule 26 applied. Bell timely appeals his sentences in both cases, and the district court ordered the cases consolidated for appeal.

THE DISTRICT COURT ERRED BY IMPOSING A PRESUMPTIVE PRISON SENTENCE ON BOTH OF BELL'S PRESENT CONVICTIONS

Bell argues the district court erroneously applied K.S.A. 21-6805(f), also known as "special rule 26," to find both of his two pending cases constituted a third felony drug possession. He asserts that the district court mistakenly applied the prior conviction definition found in K.S.A. 21-6810(a), which only applies to the calculation of criminal history scores. Before we address the merits of his argument, we must dispense with two threshold issues.

1. *Bell's Claim is Preserved for Review*

First, we must address whether Bell's claim is preserved. Before sentencing, Bell filed a written objection to the PSI reports, and at the sentencing hearing his counsel argued his specific objections to the application of special rule 26 to both of his convictions. Because he did so, the issue is properly preserved for our review.

2. *Bell's Claim is Not Jurisdictionally Barred*

Although neither party raises this issue on appeal, we first note that Bell must overcome a jurisdictional bar. K.S.A. 2021 Supp. 21-6820(c) provides that an appellate court shall not review on appeal a sentence for a felony committed after July 1, 1993, that is (1) within the presumptive revised Kansas Sentencing Guidelines Act (KSGA)

6

sentence for the crime, or (2) the result of a plea agreement between the State and the defendant which the district court approved on the record. See *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021) (appellate court ordinarily lacks jurisdiction to review presumptive sentences); *State v. Quested*, 302 Kan. 262, 264, 352 P.3d 553 (2015) (no jurisdiction to review sentences agreed to and approved by the sentencing court). Bell's sentences here fall within the presumptive sentence under the KSGA and are the results of approved plea agreements, so at first glance, it would seem we lack jurisdiction to consider his appeal.

Yet our Supreme Court has found limited instances permitting appellate review of presumptive sentences, including when the district court misinterprets its own statutory authority. See *State v. Warren*, 297 Kan. 881, Syl. ¶ 1, 304 P.3d 1288 (2013) (appellate court may review a presumptive sentence where the district court refused to consider the defendant's request for a downward departure sentence it had authority to impose); *State v. Cisneros*, 42 Kan. App. 2d 376, 379, 212 P.3d 246 (2009) (appellate court may review presumptive sentence where the district court incorrectly expressed at a probation violation hearing that it had no power to reduce the term of the defendant's sentence).

Because Bell alleges the district court misinterpreted the KSGA, this is the precise situation in which this exception would apply, and we continue to review the merits of Bell's appeal.

3. *The District Court's Statutory Interpretation was Erroneous*

Bell argues the district court misinterpreted the third or subsequent conviction provision of the drug crime sentencing grid, K.S.A. 21-6805(f)(1), and imposed a presumptive prison sentence by considering both of his present convictions as third convictions. Specifically, Bell claims the district court erroneously applied the "prior

7

conviction" definition found in the criminal history category statute, K.S.A. 21-6810(a), which should only apply when calculating the criminal history of a defendant.

### 3.1. *Applicable Legal Standards*

Interpretation of sentencing statutes is a question of law, and our review is unlimited. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019). "'An appellate court is not bound by the trial court's interpretation.'" *State v. Schow*, 287 Kan. 529, 536, 197 P.3d 825 (2008).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). So, an appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *Keys*, 315 Kan. at 698. And where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 706 (2022).

### 3.2. *A Third Offense Requires There to Have Been a Second*

The statute at the heart of Bell's appeal, K.S.A. 21-6805(f)(1), is part of the sentencing grid for drug crimes. It states in pertinent part: "The sentence for a *third or subsequent felony conviction* of . . . K.S.A. 21-5706 [unlawful possession of controlled substances], and amendments thereto, shall be a presumptive term of imprisonment and the defendant shall be sentenced to prison as provided by this section." (Emphasis added.)

8

K.S.A. 21-6810(a), although also part of the KSGA, involves the determination of an offender's criminal history. It states, in relevant part:

> "A *prior conviction* is any conviction, other than another count in the current case, which was brought in the same information or complaint or which was joined for trial with other counts in the current case pursuant to K.S.A. 22-3203, and amendments thereto, which occurred prior to sentencing in the current case, regardless of whether the offense that led to the prior conviction occurred before or after the current offense or the conviction in the current case." (Emphasis added.)

Bell claims this "prior convictions" provision in K.S.A. 21-6810(a) is for criminal history score purposes only and should not have been applied to view his two present convictions under K.S.A. 21-6805(f)(1). Under K.S.A. 21-6805(f)(1), the plain meaning of the conditional word "third"—as in "third or subsequent felony conviction"—requires the designation of a second conviction. He claims the different language used in the two statutes—"prior convictions" versus "third or subsequent conviction"—does not carry the same meaning, because the "prior convictions" provision does not require a condition precedent that a second conviction be designated.

The State agrees with the district court's invocation of the "'inclusive rule,'" allowing multiple same-day convictions to be included as prior convictions, to also apply when determining third or subsequent convictions under K.S.A. 21-6805(f)(1). The State argues to accept Bell's theory would create different meanings for the term "conviction" in the two statutes and would conflict with legislative intent. Generally, the State claims the Legislature intended both statutes, viewed under the broad umbrella of the KSGA, to share a common operative pool of terms and the defined terms within the statutes should be read in harmony.

Bell supports his theory with our court's rationale in *State v. Unruh*, 39 Kan. App. 2d 125, 177 P.3d 411 (2008). There, Unruh was convicted of manufacturing

9

methamphetamine in Case 1, and while sentencing was pending in that case, he was convicted in Case 2, in a different county, of unlawful manufacturing of methamphetamine. During sentencing of Case 1, the trial court doubled his sentence under K.S.A. 21-4705(e) (now K.S.A. 21-6805[e]), using Case 2 to elevate the conviction in Case 1 as a second conviction. There, the State argued the "inclusive rule" under K.S.A. 21-4710(a) (now K.S.A. 21-6810[a]) should apply to Unruh's sentencing allowing his first case to be considered a second or subsequent conviction. 39 Kan. App. 2d at 136. The *Unruh* court rejected the State's argument, finding that "because K.S.A. 21-4710(a) relates only to the use of prior convictions to establish a defendant's criminal history category in the [KSGA] grid, this statute does not support the State's argument." 39 Kan. App. 2d at 136. The *Unruh* court also held that "the plain language of [K.S.A. 21-6805(e)] [formerly K.S.A. 21-4705(e)] commands a definition of prior conviction different from that contained in [K.S.A. 21-6180(a)] [formerly K.S.A. 21-4710(a)]." 39 Kan. App. 2d at 137. The court explained that to allow a conviction in a subsequent case (Case 2) to be treated as the first conviction in order to double the sentence in a conviction of a prior case (Case 1) is inconsistent with the Legislature's intent under K.S.A. 21-6805(e) (formerly K.S.A. 21-4705[e]), because under such circumstances, a defendant would never have a first conviction. 39 Kan. App. 2d at 137. Thus, the court ruled that a defendant's first conviction is not subject to the doubling provisions of K.S.A. 21-6805(e) (formerly K.S.A. 21-4705[e]). 39 Kan. App. 2d at 137.

The State cites *Shipley* to argue that the "inclusive rule" of K.S.A. 21-6810(a) should apply to the sentencing provision under K.S.A. 21-6805(f)(1). Yet, *Shipley* only addressed the "prior convictions" in context of criminal history purposes. 62 Kan. App. 2d at 273-74. Following this court's holding in *Unruh*, such analysis is unnecessary for the resolution of this appeal.

The circumstances here are not entirely analogous to *Unruh*, but the court's rationale is instructive. Bell is not facing the conundrum of having his first conviction

10

used against him to double his sentence under K.S.A. 21-6805(e). The question for Bell, under the next section of the sentencing statute, K.S.A. 21-6805(f)(1), is whether his second and third convictions under K.S.A. 21-5706 can be interchangeably used as a "third or subsequent" conviction to constitute imposing a presumptive prison sentence.

The *Unruh* court's reasoning is persuasive, though. Under K.S.A. 21-6805(f)(1), to allow both convictions in these concurrent cases—where there is one existing prior felony drug conviction—to *both* be treated as a third conviction which requires a presumptive prison sentence is inconsistent with the Legislature's intent under K.S.A. 21-6805(f)(1). Under these circumstances, a defendant would never have a second conviction. This simply defies logical explanation.

Clearly, the Legislature understood the concept of an ordered series, as evidenced in K.S.A 21-6805. The ordered series addressed by our court in *Unruh* was K.S.A. 21-6805(e), directing a sentence for a "second or subsequent" conviction of unlawful manufacturing of a controlled substance. In *Unruh*, our court found that to have a second conviction, there must logically be a first conviction.

Likewise, in the ordered sequence set out in the next subsection, K.S.A. 21-6805(f)(1), the concept of a "third or subsequent" conviction inherently implies the existence of intermediate convictions—that is, both a first and a second. The first conviction must be followed by a second, and the second must be followed by a third. But by the structure of ordered sequences, the existence of a second is required.

The plain language of the statute, "third or subsequent" convictions, requires a preexisting first and second conviction of the unlawful possession of a controlled substance. K.S.A. 21-6805(f)(1). Because there is no ambiguity, this court need not resort to statutory construction. *Betts*, 316 Kan. at 198.

11

Because Bell's first conviction was already designated, the only issue remaining, then, is which of his present convictions was his second conviction. On this topic, we have two primary thoughts. First, as illustrated by the facts of this case, a second and third conviction under this rule may occur simultaneously—in this way, the reading of K.S.A. 21-6805(f)(1) does not conflict with the inclusive rule found in K.S.A. 21-6810. Each statute is simply counting the concurrent but separate convictions for their individual purposes.

Second, the designation of which conviction becomes second or third is left to the district court's discretion. Here, Bell was convicted in Case 1 and Case 2 on the same date, June 14, 2022. Defense counsel asked the district court to label Case 1 as the second conviction and to designate Case 2 as Bell's third conviction for purposes of K.S.A. 21-6805(f)(1). This would have been appropriate. If either case were to be designated as the second conviction, then logically, the other becomes the third. This would properly render only one of Bell's convictions qualified for the presumptive prison sentence under K.S.A. 21-6805(f)(1) as the third felony conviction. The other would merely be the second conviction and would not be subject to the presumptive prison sentence under K.S.A. 21-6805(f)(1).

The district court was required to designate one of Bell's current convictions as the second conviction. By failing to do so, the district court erred by imposing the presumptive prison sentence under K.S.A. 21-6805(f)(1) on one of his convictions. For this reason, we vacate Bell's sentence and remand this case to the district court with directions to designate a second and a third conviction and resentence Bell accordingly.

THE STATE BREACHED THE PLEA AGREEMENT

Bell next argues the State breached the plea agreement when it failed to join Bell's requests for probation. Specifically, he claims the plea agreement did not contain any

12

provisions allowing the State to alter its sentencing recommendations under any circumstance. Bell also argues the State neither established a substantial change in circumstances that would relieve the State from its obligation to follow the plea agreement nor asked the district court to make such findings.

1. *Applicable Legal Standards*

Whether the State breached a plea agreement presents a question of law over which appellate courts have unlimited review. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015).

"'"[A]pplication of fundamental contract principles is generally the best means to fair enforcement of a plea agreement, as long as courts remain mindful that the constitutional implications of the plea-bargaining process may require a different analysis in some circumstances."'" 302 Kan. at 116 (quoting *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 [2013]).

2. *Preservation*

Bell concedes he did not object on this basis before the district court. The State argues this issue is moot, because if we uphold the district court's presumptive prison sentence under K.S.A. 21-6805(f)(1), then it is no longer a border-box matter considered by the plea agreement. We do not, so this argument is not persuasive. But even if any of the exceptions to preservation apply, the State contends there was a material change in circumstances that precluded the State from upholding the plea agreement.

Although Bell did not raise this issue before the district court, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including:  (1) the newly asserted theory involves only a question of law

arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Bell claims that his appeal meets the first and second exceptions, and we agree. First, the question of whether the State breached the agreement is a question of law, and all the necessary facts to decide the question are contained in the appellate record. Second, when the State violates a plea agreement, the defendant's due process rights are violated. *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). As such, "appellate courts may address the issue for the first time on appeal in order to serve the ends of justice or prevent a denial of fundamental rights." *State v. Chetwood*, 38 Kan. App. 2d 620, Syl. ¶ 4, 170 P.3d 436 (2007). Accordingly, we consider Bell's appeal of this matter despite his failure to object below.

3. *The State Breached the Plea Agreement*

Bell argues the plea agreement did not include a provision which would allow the State to alter its sentencing recommendation, so it breached the agreement when it recommended Bell should serve 5 years in prison instead of the agreed 12 to 18 months of probation. He also asserts the State failed to establish a material change in circumstances to relieve itself of the obligations of the plea agreement. Bell claims the two positive UAs before sentencing did not constitute a significant or material change in circumstances. Bell also argues the State failed to advise the district court of its intent to depart from the sentencing recommendation in the plea agreement. He claims his due

14

process rights were violated when the State breached the agreed-upon sentencing recommendations.

On June 14, 2022, Bell signed a global petition to enter plea agreement covering each of his current cases. As Bell claims, the plea agreement does not contain a provision permitting the State to revoke the plea agreement if Bell violates conditions of bond. Yet in *State v. Marshall*, 21 Kan. App. 2d 332, 335-37, 899 P.2d 1068 (1995), this court held that an implied condition exists in a plea agreement that circumstances surrounding the agreement will remain substantially the same and that subsequent changes will be sufficient to relieve the State of its obligation. See *State v. Burkett*, 231 Kan. 686, 691-93, 648 P.2d 716 (1982).

Bell argues that the two positive UAs, which formed the basis of the State's nonperformance, did not so materially change the circumstances as to warrant the State abandoning the plea agreement. He claims that drug relapses are well-recognized and "'[t]here [were] going to be mess ups.'" But he also claims he was attending meetings and going to outpatient treatments and provided no fewer than 17 "'clean'" drug tests. Bell argues although the district court and the State only focused on his history of substance abuse, the positive testing did not constitute a significant or a material change in circumstances considering his months of sobriety during the pendency of these cases.

The State responds that Bell testing positive for methamphetamine was a material change in circumstances that relieved the State from the obligation to follow the sentencing recommendation in the plea agreement. The State claims the premise of the plea agreement was for Bell to receive effective drug treatment and continued sobriety, and at the time of the plea hearing, Bell was sober and engaged in treatment. His continued success through more effective non-prison treatment was the basis of the plea offer by the State. The State asserts that Bell's post-plea failure to stay sober calls into question the efficacy of his drug treatment plan, his long-term prognosis, and the State's

15

interest in deterring potential recidivism. The State argues that Bell's failure negated the purpose for recommending non-prison sanctions, mainly because his continued drug use decreased the likelihood that continued non-prison sanctions could meet the needs of the community and Bell.

Perhaps, and probably in all likelihood, this was the impetus for the plea agreement. But the plea agreement is silent on its purpose, and silent as to any rationale which might support a party's deviation from its terms. Any ambiguity in a plea agreement should be strictly construed against the State because the State controls the plea agreement process. *State v. Case*, 289 Kan. 457, 462, 213 P.3d 429 (2009); see *Marshall*, 21 Kan. App. 2d at 336. Construing the contract in favor of Bell, the four corners of the contractual agreement is silent about an exit clause for the State to relieve itself of the obligation to follow the plea agreement. On the face of the contract, the State breached the parties' plea agreement.

Having found that the State breached the plea agreement, we must next decide whether the State's breach constitutes harmless error. Such a breach denies the defendant due process even when the district court's sentencing decision is unaffected by the breach. *Urista*, 296 Kan. at 594. In *Urista*, our Supreme Court found that the breach of the plea agreement can constitute harmless error "if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." 296 Kan. at 594-95.

Were the question solely whether the breach affected Bell's sentence, this case may offer a different question, because the State's promise would not have affected the outcome of Bell's sentence. See *State v. Peterson*, 296 Kan. 563, 574, 293 P.3d 730 (2013) (suggesting a defendant would not be entitled to a remedy for the State's breach if the reviewing court could say there was no reasonable possibility the breach contributed to the sentence). According to the plea agreement, the State was to join the

16

recommendation for a median sentence in the gridbox only *if* Bell was found to be in the border box. But the district court did not sentence Bell in the border box, so the State's failure to join the recommendation had no effect on Bell's sentence.

But the Kansas Supreme Court in *Urista* clearly articulated a test for harmlessness that concerns only the effect that the State's promise had on the defendant's decision to enter into the plea agreement at the outset. 296 Kan. at 594-95. Bell argues that at least one of his cases had been pending for almost three years, and only when the State agreed in writing to recommend probation in both cases did Bell agree to plead no contest. We cannot, then, find beyond a reasonable doubt that the reneged-upon promise of probation was harmless. The State's breach of the plea agreement was erroneous.

The State tries to convince us that the two positive drug tests were a material change in circumstances which validate its deviation from the plea agreement. But it did not ask the district court to make such findings. Because we have no such findings to review, we will not make such findings for the first time on appeal.

We are vacating Bell's sentence and remanding this case to the district court for resentencing on the first issue in this case. As part of resentencing, the State should be cautious about its approach to its sentencing recommendations in line with the reasonings above. And resentencing before a different judge is the typical remedy for the State's breach of a plea agreement. *Peterson*, 296 Kan. at 574.

Sentence vacated and case remanded with directions.